UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY McDONALD,

                         Petitioner,                  Case No. 1:13-cv-890

v.                                            Honorable Paul L. Maloney

JOHN PRELESNIK,

                         Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Terry McDonald pleaded guilty in the Wayne County Circuit Court to two counts of first-degree criminal sexual conduct (CSC I), MICH. COMP. LAWS §§ 750.520b(1)(c) (sexual penetration occurs during the commission of another felony) and 750.520b(1)(f) (causing personal injury), one count of armed robbery, MICH. COMP. LAWS § 750.529, and one count of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2). On April 24, 2009, he was sentenced as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to 26 to 40 years' imprisonment on each of the CSC-I and armed-robbery convictions, and to 15 to 20 years' imprisonment on the home-invasion conviction. In his *pro se* petition, Petitioner raises three grounds for relief, as follows:

    I.      THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE MOTION TO WITHDRAW THE PLEA BEFORE SENTENCING.

    II.     [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY BOTH THE MICHIGAN AND UNITED STATES CONSTITUTIONS, WHERE TRIAL COUNSEL ABANDONED

[PETITIONER'S] ONLY DEFENSE TO SEXUAL ASSAULT ALLEGATIONS.

III.   [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY BOTH THE MICHIGAN AND UNITED STATES CONSTITUTIONS, WHERE TRIAL COUNSEL PERSUADED [PETITIONER] TO PLEAD GUILTY TO CRIMINAL OFFENSES WHILE UNDER THE INFLUENCE OF PSYCHOTROPIC DRUGS.

IV.   [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY BOTH THE MICHIGAN AND UNITED STATES CONSTITUTIONS, WHERE APPELLATE COUNSEL FAILED TO RAISE THE ABOVE ISSUES IN POST-TRIAL APPELLATE PROCEEDINGS.

On April 4, 2014, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES, and an answer to the petition (ECF No. 7), stating that the grounds should be denied because they are noncognizable, procedurally defaulted, and/or without merit. Upon review and applying the AEDPA standards, the Court finds that all habeas grounds are either noncognizable or meritless. Accordingly, the Court will deny the petition for failure to raise a meritorious federal claim.

**Procedural and Factual Background**

After breaking into a woman's home, Petitioner raped her at knife-point and threatened to kill her. He injured the woman in the process, and he forced her to swallow over a dozen pills. At the time he committed the offenses, Petitioner was on parole. Petitioner originally was charged with six counts of CSC I, and one count each of armed robbery, first-degree home invasion, and larceny in a building. As a fourth-offense felony offender, Petitioner faced a potential life sentence.

Petitioner was appointed counsel to represent him. On February 19, 2009, defense counsel filed a motion for a polygraph examination and for production of DNA test results. Following a

hearing on March 3, 2009, the trial court granted the motion.  On March 27, 2009, the court reviewed a competency evaluation and concluded that Petitioner was competent to stand trial.  (Plea Tr., ECF No. 8-3, PageID.205.)  The parties stipulated and the court noted that the criminal responsibility determination of the psychological evaluation was not ready, but was expected to show that there was not a basis for an insanity defense.  (*Id.*, PageID.203, 205.)  The prosecutor also withdrew the motion to introduce other bad acts and reported that a polygraph had been arranged, but Petitioner had declined to take it.  (*Id.*, PageID.204.)

The plea agreement consisted of an offer under which Petitioner would plead guilty to two counts of CSC I, one count of armed robbery, one count of first-degree home invasion, and to being a fourth-offense felony offender.  The prosecution agreed to dismiss the larceny charge and the remaining CSC I charges, which merely represented alternate theories for the single act of sexual assault.  (*Id.*, PageID.205.)  The plea also was subject to a *Cobbs*[1] agreement to a sentence of 26 to 40 years, which was toward the lower end of the estimated guidelines range of a minimum sentence of 22 ½ to 75 years. (*Id.*, PageID.204.)

In discussing the plea, the trial court explained the tentative nature of the sentence offer to Petitioner, which the court could reconsider at the time sentence was entered, but only if Petitioner was allowed to withdraw his plea.  Petitioner agreed that he understood the *Cobbs* agreement.  (*Id.*, PageID.206.)  The court then thoroughly questioned Petitioner about his understanding of the proposed

---

[1] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court approved a process under which a judge conducts a preliminary evaluation of the case and makes a tentative offer of the sentence prior to a defendant's entry of a plea.  The supreme court held that such an agreement was lawful, if the defendant was given the right to withdraw the plea when and if the judge on full review decided not to honor the earlier agreement).

plea and the voluntariness of his decision to waive his right to a trial. Petitioner reported that he had completed education through the seventh grade. He declared that he understood the plea offer and understood that he was waiving his rights to a jury trial, to the presumption of innocence, to the requirement of proof beyond a reasonable doubt, to remain silent, and to testify. (*Id.*, PageID.207-209.) Petitioner also denied receiving any other promises, and he denied being threatened or coerced into pleading guilty. He acknowledged his signature on the plea agreement. He also acknowledged that, by entering into a plea agreement, he was giving up his appeal of right, becoming eligible to file only an application for leave to appeal. (*Id.*, PageID.210-211.) Petitioner stated that, having been advised of all the rights he was waiving, he still intended to plead guilty, and he specifically entered a guilty plea to each of the offenses of conviction and admitted that he had three prior felony offenses. (*Id.*, PageID.211.)

The prosecutor then asked questions to establish the factual basis for the plea. Petitioner admitted that he had broken into the victim's apartment on October 12, 2008. While he was in the apartment, the victim came home. Petitioner admitted that, against the victim's will, he forced his penis into the victim's mouth and vagina. He also admitted that he caused the victim injury to her buttocks, shoulder and vagina. In addition, Petitioner admitted putting a knife to the victim's throat and threatening to kill her. Petitioner also forced the victim to swallow between 13 and 15 pills. Finally Petitioner admitted that he had two prior convictions for first-degree home invasion. The prosecutor also placed on the record the fact that Petitioner was on parole at the time of his offense conduct. (*Id.*, PageID.212-214.) The court then found a factual basis to support each of the guilty pleas and the fourth-offense felony-offender notice. It therefore accepted the pleas. (*Id.*, PageID.214.)

At the time scheduled for sentencing on April 24, 2009, defense counsel described a letter sent by Petitioner to the court and defense counsel, indicating that Petitioner wanted to withdraw his plea because he had been emotionally overwrought at the time of the plea, making his plea involuntary. (Sentencing Hr'g Tr., ECF No. 8-4, PageID.221.) Counsel represented that, in response to the letter, he had advised Petitioner that the parties had been scheduled to go to trial, so it was inevitable that Petitioner was required to make a decision that day, but he reminded Petitioner that the court had allowed ample time for Petitioner to talk with his attorney and with his family. Counsel also reminded Petitioner of his "astronomical" exposure to twice as long a sentence after trial, given his criminal history and the fact that he was on parole. (*Id.*) Nevertheless, Petitioner continued to express his wish to withdraw his plea. (*Id.*, PageID.222.) Counsel then argued on behalf of Petitioner's request to withdraw the plea, reasoning that withdrawing the plea would not cause prejudice to the prosecution, given the short passage of time since the entry of the plea and the continuing availability of witnesses. Counsel also represented that he intended to file no other motions in the case. (*Id.*)

The prosecutor responded that no basis existed for withdrawing the plea. Petitioner had been carefully advised of his rights and had repeatedly responded that his decision to plead was knowing and voluntary. The prosecutor also noted that Petitioner had admitted the conduct on the record and was not contending that he was actually innocent. (*Id.*, PageID.223.)

The court acknowledged receiving the letter from Petitioner dated April 11, 2009, in which Petitioner claimed, "'I was very emotional and unconscious of what was going on.'" (*Id.*, PageID.224.) The judge indicated that he had a clear recollection of the case because of the terrible nature of the allegations. He stated that, while all plea decisions are emotionally difficult, he recalled that special

accommodations had been made to allow Petitioner to spend a lengthy period of time with his attorney and with his family. He recollected that Petitioner understood clearly the discussions that were taking place, and he remembered no indication that Petitioner had not fully understood what he was doing or the agreement he was reaching. The judge also recalled that Petitioner was very aware of the sentences he potentially faced if he decided to go to trial. For all these reasons, the court denied the motion to withdraw the plea. (*Id.*, PageID.224-225.)

The judge then proceeded to the sentencing phase of the hearing. Defense counsel raised no objections to the presentence investigation report (PSIR). The prosecutor, however, emphasized the importance of the accuracy of the PSIR, notwithstanding the *Cobbs* agreement. She therefore requested that Offense Variable (OV) 1 be changed from 10 points to 15 points because the victim had a reasonable apprehension of a battery, based on Petitioner's use of a knife to threaten her. Defense counsel made no objection to the change, and the court adopted it. (*Id.*, PageID.226.) The prosecutor next requested that OV 10 be changed from 5 points to 15 points, based on the predatory nature of the offense, given that Petitioner had lived in the same building, was known to the victim, and had been in the apartment waiting when the victim came home from church. The court agreed. (*Id.*, PageID.227-228.) Finally, the prosecutor requested that OV 19 be changed from a score of zero to a score of 15 for interference with the administration of justice, based on Petitioner's threat to kill the victim and her family if she reported the crime. (*Id.*, PageID.228.) After a break to look at the case law, the court agreed that it was appropriate to change the scoring of OV 19. (*Id.*, PageID.230-231.) Defense counsel made a lengthy argument to the contrary, indicating that the variable ordinarily was not used in these circumstances, that the victim was in no way prevented from calling the police and she did so immediately, making it appear that she did not

take any threat seriously.  Petitioner also had admitted his responsibility, undermining any conclusion that he was attempting to interfere with the administration of justice.  (*Id.*, PageID.231-232.)  The court rejected defense counsel's arguments and increased the OV-19 score to 15 points.  As a result, the total offense-variable score increased to 120 points, raising Petitioner from a level five to a level six offender and raising the guidelines range for the minimum sentence from 19 to 40 years to 22½ years to 75 years.[2]  (*Id.*, PageID.234.)  The *Cobbs* agreement of a 26-year minimum remained within the guidelines, at the lower end.  (*Id.*, PageID.234-235.)

        The victim appeared at sentencing and testified about the horrible violations to her body, mind and soul caused by the rape, torture and humiliation of Petitioner's conduct.  (*Id.*, PageID.237.)  She testified that, although she was afraid of heights, she was more afraid of Petitioner, and she jumped out of her second-story window to escape, causing life-long injuries to her leg and back.  She testified that she had gone from a confident and happy woman to a person who was always angry, vulnerable, and afraid.  The victim testified that she was no longer able to live in an apartment and that she depends on others to do the smallest things she used to take for granted.  (*Id.*, PageID.237-238.)

        Petitioner used his opportunity for allocution to critique minor, immaterial differences between the victim's statement to police and her statement in court, including a difference in time of less than half an hour and the reason for her return to her apartment.  He also critiqued the victim's claim that she had life-long injuries, when the medical report had listed no injuries.  Petitioner argued that he wanted to take back the plea because he could have challenged these things at trial, and he expressed his

---

[2]As reflected in the statement of facts, *supra*, the longer range of 22½ to 75 years was the estimated range at the time Petitioner entered his plea.

dissatisfaction with his attorney having failed to show him the DVD of the victim's police interview.  (*Id.*, PageID.240-241.)

The judge was unimpressed by Petitioner's decision to attack the victim's statement, and he again denied the motion to withdraw the plea, concluding that Petitioner's statements demonstrated that Petitioner's reason for asking to withdraw the plea obviously was that he had belatedly decided that he was unhappy with spending 26 to 40 years in prison.  The judge reiterated his own struggles with agreeing to a *Cobbs* evaluation, especially at the low end of the guidelines, having ultimately decided to do so only to allow some closure for the victim.  Despite Petitioner's continuing apparent denial of the seriousness of his actions, the judge, with reluctance, decided to follow the *Cobbs* agreement for the same reason he agreed to offer it.  The court therefore sentenced Petitioner to three concurrent prison term of 26 to 40 years on the CSC-I and armed-robbery convictions and 15 to 20 years on the home-invasion conviction, all of which were to run consecutively to the sentences for which Petitioner was on parole at the time he committed the offense conduct.  (*Id.*, PageID.241-246.)

Petitioner filed an application for leave to appeal to the Michigan Court of Appeals, raising the first ground presented in Petitioner's habeas application.  In an order issued on October 12, 2010, the court of appeals denied leave to appeal for lack of merit in the grounds presented.  (ECF No. 8-5, PageID.249.)  Petitioner raised the same ground in his application for leave to appeal to the Michigan Supreme Court.  The supreme court denied leave to appeal on March 8, 2011.  (ECF No. 8-6, PageID.314.)

On May 12, 2011, Petitioner filed a motion for relief from judgment in the Wayne County Circuit Court, raising the same issues as those presented in Grounds II through IV of his habeas application.

-8-

In an order issued on October 26, 2011, the circuit court denied the motion, both because Petitioner had failed to demonstrate cause excusing his failure to raise the claims on direct appeal, as required by MICH. CT. R. 6.508(D)(3)(a), and because the claims Petitioner raised lacked merit. (E C F  N o .  8 - 7 , PageID.327-333.)

Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court, raising the same three claims presented to the trial court.  Both courts denied leave to appeal, on June 8, 2012 and November 12, 2012, respectively.  (*See* ECF Nos. 8-7, 8-8, PageID.326, 368.)

In his habeas application, Petitioner raises all four issues presented to and rejected by the Michigan courts on direct and collateral review.  The petition was timely filed.

### Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts

-10-

enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well

as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

    I.      <u>Grounds I and III:  Withdrawal of the Plea</u>

        In his first ground for habeas relief, Petitioner argues that the trial court erred when it denied his motion to withdraw his guilty plea.  Petitioner argued in the state appellate courts that the trial court's denial of his motion violated MICH. CT. R. 6.310(B), because withdrawal of the plea was in the interests of justice and the government did not demonstrate substantial prejudice.  Plaintiff also contends in both Ground I and Ground III that his plea was not voluntarily, knowingly, or understandingly made.  He asserted at trial that he was highly emotional and no aware of what was going on.  He claimed for the first time in his motion for relief from judgment that he was taking Seroquel and Zoloft at the time of the plea and that he had never previously taken psychoactive medications.  Finally, he argues that his trial attorney was ineffective in persuading him to plead guilty while he was on those psychoactive medications.[3]

        A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Brady v. United States*, 397 U.S. 742 (1970), and *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, Petitioner's claim that he should have

---

[3]The Court will address the ineffective-assistance-of-counsel claim in Section II of the Discussion portion of this opinion.

been permitted under MICH. CT. R. 6.310(B) to withdraw his guilty plea is a state-law question that is not cognizable on habeas corpus review.

Petitioner also fails to demonstrate that his plea was not valid. In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state

could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

As earlier discussed, the trial court expressly found Petitioner competent to stand trial, based on the report of an independent psychological expert. (ECF No. 8-3, PageID.205.) The court also exercised great care in ensuring that Petitioner understood the gravity of the charges against him, the maximum penalty he faced, the rights he would waive by pleading guilty, including the impact of his plea on the appellate review available to him, and the nature of a *Cobbs* plea. Petitioner declared on not less than 15 occasions that he understood the charges and his rights and that he was not being coerced into entering the plea. (*Id.*, PageID.207-211.) In addition, Petitioner responded clearly and unequivocally to the court's repeated questions about his understanding of the plea and reaffirmed his desire to enter the plea

-14-

after being advised of all of the rights he was waiving. (*Id.*) Under settled Sixth Circuit authority, a "defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)(quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).

Moreover, nothing in the record suggests any hesitancy or lack of clarity in Petitioner's demeanor or in the consistency of his response. Petitioner's mere statement that he was taking psychoactive medications, an issue not even raised at the time he sought to withdraw his plea,[4] does not rise to the level of clear and convincing evidence necessary to overcome the strong presumption accorded his decision to plead guilty, made even stronger by the AEDPA presumption accorded the trial court's finding that Petitioner was competent and the plea was voluntary. *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Further, the record reflects that the court took great care to provide Petitioner substantial time to fully discuss the choices he faced with defense counsel, and the court made special arrangements to allow Petitioner to meet with his family in the jury room to discuss his options. (*Id.*, PageID.203; ECF No. 8-4, PageID.221, 224.) In addition, Petitioner obtained substantial benefit from the plea deal. Although he still faced a lengthy prison term under the plea agreement, he could have been sentenced to as much as life imprisonment, and his guidelines range could have justified a minimum sentence of 75 years.

In sum, the trial court's determination that the plea was made knowingly and voluntarily was fully supported by the record. Petitioner has utterly failed to meet his "heavy burden" to overcome the presumption of correctness accorded the state court's finding. *Parke*, 506 U.S. at 29. Petitioner is not

---

[4]In fact, Petitioner did not suggest that he was under the influence of psychoactive medications until he filed his application for leave to appeal to the Michigan Supreme Court.

entitled to habeas relief on his first and third habeas grounds, because the state court's decision constituted a reasonable application of clearly established Supreme Court precedent and was based on a reasonable determination of the facts.  28 U.S.C. § 2254(d).

## II.    Grounds II andd III:  Ineffective Assistance of Trial Counsel

In his second ground for habeas relief, Petitioner contends that his trial attorney was ineffective when he abandoned Petitioner's only defense to the sexual assault allegations.  Specifically, he alleges that counsel asked for production of DNA results, but then failed to have the evidence analyzed for DNA comparison.  In Ground III, Petitioner argues that counsel was ineffective in persuading Petitioner to plead guilty while Petitioner was under the influence of psychoactive medication.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a

-16-

court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

With respect to Ground II of his petition, at the time Petitioner entered his guilty plea, he was fully aware of counsel's ostensible failure to ensure the availability of DNA evidence. Yet Petitioner

-17-

elected to proceed to enter a guilty plea, in order to obtain the substantial benefit of a sentencing agreement.

Since prejudice in a guilty-plea case requires a showing that Petitioner would not have pled guilty, *see Hill*,

474 U.S. at 58, Petitioner cannot demonstrate the requisite prejudice. "When deciding ineffective-

assistance claims, courts need not address both components of the inquiry 'if the defendant makes an

insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting

*Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack

of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466

U.S. at 697. Because Petitioner fails to demonstrate prejudice, the Court need not reach the performance

prong of *Strickland*.

      Moreover, Petitioner's claim under Ground II also fails because a valid guilty plea bars

habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See*

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Counsel's decisions concerning the preparation of

evidence for trial are clearly such antecedent violations, which were waived by Petitioner's decision to enter

the plea. As previously discussed, Petitioner's plea was valid, as it was knowingly, understandingly and

voluntarily entered. His claim of ineffective assistance of counsel with respect to the DNA evidence

therefore is barred. *Id.*

      Finally, Petitioner's claim under Ground III fails because the Court already has determined

that Petitioner was competent and that his guilty plea was validly entered. As fully discussed *supra*,

Petitioner utterly fails to demonstrate that his judgment was impaired at the time he entered his plea. Even

without the deference owed to the state-court determinations, it is apparent from the record that Petitioner

was competent and entered a knowing and voluntary plea. As a consequence, Petitioner cannot overcome

the presumption that counsel acted reasonably in permitting him to plead guilty while knowing that Petitioner was taking psychoactive medications, *Strickland*, 466 U.S. at 689, much less the presumption that the state court acted reasonably in so concluding. *See, e.g., Harrington*, 562 U.S. at 105 (emphasizing the double deference owed to state-court determinations that counsel's performance was reasonable).

For all these reasons, Petitioner's claims of ineffective assistance of trial counsel are meritless.

### III.   Ground IV:  Ineffective Assistance of Appellate Counsel

In his final ground for habeas relief, Petitioner argues that his appellate attorney was ineffective in failing to raise Grounds II and III on direct review.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Here, Petitioner cannot demonstrate that his claims were clearly stronger than the single appellate ground raised by his attorney.  As the Court has discussed, Petitioner's belatedly raised grounds

-19-

for relief lack merit.  Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).  Accordingly, Petitioner fails to demonstrate any error in the state-courts' decisions, much less that those decisions were either contrary to or an unreasonable application of clearly established Supreme Court precedent.

## Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  July 29, 2016              /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge